Your Honor, this case ended up in 2017 at 09607 while Mr. Reno, who is a member and active representative of the class of similarly situated persons, plaintiff and count, v. Newport Township, and a little-known politician at now, are giving on behalf of the plaintiff and count, Mr. Robert J. Long are giving on behalf of the defendant at least, Mr. Robert P. Hogan III, and also are giving on behalf of the defendant at least, Mr. John P. Higgins. Good morning, and may it please the court on this beautiful day. A couple of years ago, a 584% tax increase went into effect in Newport Township, and something like 8,000 or 10,000 people were deprived of their right to vote on this question. Article 1, Section 1 of our Constitution, the very beginning of our state constitution, says that the citizens own the right to consent to taxation. This is their fundamental right. They were deprived of that opportunity. Petel, which came along quite a bit after the Constitution was adopted in 1970, said, to exemplify and to buttress that fundamental right, that people have the right, a very clear right, to vote on taxation issues in the counties, and yet that was directly violated. So what we have here is we have a situation where an awful lot of people were not given an opportunity, and in fact, a whole lot of procedures were ignored in the process. Isn't the issue here then what the proper remedy is in that situation? Yes, it is. And in the summary of your argument, in your white brief, your opening brief, you indicated that no court has ever considered that a lawsuit alleging willful violation of Petel is not truly a tax objection. Right. And that this case asserts a claim that an entire statutorily required process was deliberately violated. In a case called Hawkins v. Far South CDC, Incorporated, a first district case from 2013, the court there held that the objection procedures of the property tax code apply whenever a tax payer is seeking to challenge either a tax, assessment, or a levy, and he's seeking a refund of taxes. Isn't that what you're doing? No. And why not? Why are you not raising a tax objection? This isn't really a tax objection. For one thing, tax objection has never been clearly defined in Illinois. There is no case out there that I've been able to find or the counsel has cited which explains exactly what the parameters of a tax objection are. So we're left with this loose definition. It isn't defined in the statute either. But don't you want money back, which is the object of a tax objection? It could be. That would be an object. Well, isn't that what you want, your client wants, his money back? That's part of it. Okay. What he wanted was to have his right to vote. What he wanted was to not have a levy asserted on him without his ability to effectively challenge that. He wanted the procedure followed that was in the statute. Isn't that correct? That part is true. Right. And don't we have a myriad of cases that provide when the procedure isn't followed that the proper remedy is a tax objection proceeding? If it's only a procedural issue, that's true. And why is this not a procedural issue? Because the right to vote is substantive. That takes us out of that entire context. But in his referenda, whether it's in a general election or in a smaller special election, there is the right to vote. The question is the venue, correct? No. It's not? How could it not be? No, because here we're dealing with what amounts to a nonvenue. The Highway Code sets up an initial phase of the process, just the very beginning of it, in which the electors, whoever notices this, might wander over to Township Hall on a special election day. And in this particular instance, something like under 100 people cast a ballot of some sort. They voted. That just sets up the process for what needs to come after that, which is to put it on the ballot and end up with a referendum that is presented to the people as a whole. How is that not procedural, then? Because that part is procedural, but that's a process that sets up the substantive right. It doesn't address the substantive right directly. The substantive right is the right at the ballot box for people to say, this is right, this is wrong, we need the money for this, we don't need the money for that. We consent to it. But that right to vote exists whether it is exercised at a general election or a smaller venue. A person has the right to vote. It's what the tax code does or PTEL does is say how and where that right to vote should be exercised. I don't really think so, and I don't really think, and I respectfully disagree, because I think that you have to read the two provisions together to understand what this is. It's the same thing that there's a process by which, say, the Democratic Party nominates somebody to put them on the ballot. That's part of the process. But the substantive right to determine who should be the ultimate winner of the overall election isn't determined at that phase. It's determined at the general election. But the statutory authority under which this happened allows this annual or special meeting to finalize the issue, doesn't it? No. And why not? Because all it does is it, outside of the collar counties, outside of the PTEL zone, it does. And that's where the differentiation needs to be drawn clearly. But if you're in Calhoun County, in the middle of nowhere, hopefully nobody's from Calhoun County, that's one thing. Then that makes sense. You're voting for it. It's a small town. It's a small area. And it isn't governed by the same set of procedures. Our process here is a multistage process. The first thing that has to happen is, in fact, they vote of those electors to tell the township board to put something on the ballot. Then they've got to put it on the ballot. They've got to pass a resolution, adopt an ordinance, do something to tell the clerk to put it on the ballot. But only the people have the power, the jurisdiction, the authority, the ability to be right or wrong. They're the only ones that can do that. And the only place that they can exercise that right is at the ballot box. Why don't the statutory tax objection procedures provide an adequate remedy at law in this case? Because they have no ability to dictate what happens afterwards. Would you explain that, please? Primarily, yes, I'd be happy to. Primarily, this case is about, and you asked me in the beginning, what is it that he's really looking for, right? What he's really looking for is he doesn't want this tax collected out of the future until it's gone to the ballot box and people have had the opportunity to speak up. So you don't want any money back? What's missing in the tax objection case is you can win the tax objection. Okay, he gets his 50 bucks back off of his particular property. So what? It's on his tax bill next year and next year and next year. Nothing ever happens. So the question that really brought this up was, why is it that PTEL doesn't have a remedy built into it? And what happens when you have a direct violation of PTEL? Are you really stuck with this tax objection as your only remedy? Does that really make sense? Well, what about the unauthorized by law exception? Right. So are you saying that this tax was not authorized? Absolutely. The only people that could authorize the tax are the people with jurisdiction. So they didn't have the power? This was not? What about the highway code? Didn't that provide the authority for this tax? No, it did not. It just simply provided the opening ability for this to get to the people that could make the decision. I'm sorry, I don't understand what you mean by the opening ability. There is a provision in the highway code that provides, if certain provisions are followed, that there is the authority to levy a tax. No, it doesn't. For purposes, no? No, because it says, the PTEL says, notwithstanding revisions, requirements, or limitations of any other law, all taxing districts subject to the law shall follow the provision in this section whenever seeking referenda to levy a new road fund levy rate or increase the limiting rate. That is a limitation on the power of the electors to do anything in that type of pseudo-referendum. Is it a new rate? This is a new rate, yes. What about the relate-back or the roll-back provision where you can go back a few years and use the same rate? That's a tricky argument. I think it absolutely fails because this was a repealer. If you go back to the definition of what it means to repeal something, it's to blow it up, to eliminate it. It no longer exists. You can't continue something that doesn't exist anymore. It's a new tax. Now, this unauthorized by law exception, does it allow a plaintiff to maintain a class action? That's never been determined. However, if you look at the Millennium Park case, it allows an action as separate from the tax ejection process. The tax ejection process limits the ability of cases to be brought as class actions. But if you're outside of that, if you're outside of that box that the tax ejection process sets up, there's nothing to limit your ability to bring a class action. Okay. Well, this really, Millennium Park wasn't outside the box. This was the unauthorized by law was the exception. Correct. Okay. The box I'm talking about is outside the tax ejection process because they said you don't have to follow the tax ejection process. Excuse me. You're saying that Millennium Park said that? Yes. That's my reading of it. No, Millennium Park said that you couldn't tax a license. You could tax a lease. Exactly. That was the end game of that particular case. This is not, there's no issue about licenses or leases in this case. No, there isn't any issue about those. That's correct. But I believe it stands for the proposition that a tax that is wholly unauthorized can be challenged in a manner other than through the tax ejection process. But if you want, I mean, I have, I said something during the course of your presentation, and I apologize. If you don't want money back, then maybe this, or your client doesn't, maybe you have a good argument. But don't your client, doesn't your client on his behalf and on behalf of others want their money back? Well, certainly this is a, this case involves money that's taken from them without due process of law, without the process that the law allows and sets forth. It clarifies the substantive rights as well as the procedural rights. But aren't there many cases, mostly at the federal level, that say that the proper remedy when money is requested is to go to a tax ejection? If you're talking about the two, especially the two procedural cases, that's true. But neither one of those, neither at the Senate circuit nor the Illinois Supreme Court, talked about voting rights. Voting rights weren't an issue in either one of those cases. And I've not seen a case where the voting rights, where the people hold the power to consent to it and they're deprived of that ability and the money is just taken from them. I've not seen a case that says that that isn't deprivation of their constitutional rights. Because it certainly seems that. Well, there, no one was prohibited from attending this meeting. Correct? I suppose that's probably true. Maybe there wasn't room in that particular space, but they could have made room. Right? Maybe. All right. If 4,000 people showed up to vote, I doubt seriously they had a venue in Newport County to figure it out. Big screens. They'd figure it out. But the bottom line is, there was a vote. And it wasn't to put a referendum on the ballot. It was to impose this tax. That's right. Nobody asked for a referendum at that meeting. No, actually, there were requests for a referendum, but that's outside the record. All right. But the vote that took place was for a tax increase, rolling back, looking back, whatever the term is, to this tax that had been repealed by a previous leadership in the district. Well, the vote itself, when you look at the specific language of the vote, was to impose a tax, period. Right. It wasn't to look back and reinstate something that had already been in place. That appears to be a legal fiction created by lawyers after the fact. But it wasn't to put a referendum on the ballot. It was not to put a referendum on the ballot. They didn't want to put a referendum on the ballot, probably because there is so much political opposition at the present time and in recent years to the burden of property taxes. And, of course, if the general population goes through the property tax appeal and gets their money back, they also have the right to vote at the next township election to, yes, well, let me finish the question, to disengage or remove the people who engineered this particular tax increase. I suppose that is one place where they can exercise some extra judicial remedy, yes. Why isn't that a sufficient judicial remedy, extra judicial remedy? Because nothing happens for the four years. And there is no guarantee that the people will understand the way that this particular tax was set up on their tax bill, will even understand that there was a new tax imposed because it is buried inside the line items. And they are difficult to understand for even lawyers in many instances. So people may not know that, you know, Roving Ridge Newport gravel isn't illegally adopted unauthorized tax. So they wouldn't necessarily understand that. And if it is a small enough chunk on their tax bill, they may not recognize it. What happens if this initiative for no more townships takes place in the next year or so? Because it is out there in the state legislature. I don't know. I am not quite sure what is going to happen if that comes down the pike. It is something I think that deserves a full flushing out. But I think that is a political issue. Well, what happens to this issue? I don't know. I don't know what the parameters of the statute that the General Assembly might adopt and whoever is governor would sign the law. They could kill the levy. They could carry it over. I don't know. If the proper procedural steps had been followed here, you aren't claiming that there was no authority to levy the road tax, are you? The people have the right to levy the road tax. No, that wasn't the question. It was if the proper procedural steps had been followed here, the ones that you have been talking about. Right. Are you claiming that there was no authority then or there would have been no authority to levy this tax? Well, the difference and the reason, I'm not trying to be cute, really. I'm not. My point is simply that the people have the ability to consent to the tax, and it could be authorized under that setting. But the township board by itself or the few electors that showed up at this special meeting didn't have the power to do anything other than put it on the ballot and forward it to the next stage. Thank you. Thank you. If you have an opportunity, we'll reply. Mr. Holden. Thank you. Good morning. Good morning. If things are, as the plaintiff counsel just stated, which I haven't conceded for a second that they are, the township followed the highway code and properly implemented the new road tax. It was not a new rate. But nonetheless, if... It's a new road tax but not a new rate? It's not a new rate. Correct. All right. And why isn't it a new rate? Well, because we had imposed the same exact rate in the past as recently as 2011. Okay. Now, if things were, as plaintiff just said, that the township did not properly implement the new road tax, the question is, what is the remedy? And the legislature sets forth very clearly what that remedy is. The remedy is pursuant to the property tax code. Plaintiff claims that there's no definition of a property tax. That's not correct. You just need to look at Section 2315 of the property tax code, which is it states provides a complete remedy. The property tax code provides a complete remedy for any claims with respect to taxes, assessments, or levies. It's very all-encompassing. And the procedure is set forth in the code is you file your tax ejection complaint. You have a hearing. At that hearing, you can contest the legality of the tax as well as any constitutional rights that you claim to violate. So if you believe your right to vote was violated, you can contest that at the tax ejection proceeding. How can you contest a right to vote at a tax, to vote on the levy at a property tax appeal? Well, according to the South National Bank v. County of Cook, as well as the fraud case, constitutional rights can be litigated and adjudicated at a tax ejection proceeding. And then there is an appeal process from that tax ejection proceeding. So any constitutional rights, right to vote, any takings, anything can be adjudicated at a tax ejection proceeding. And if you prevail, then you're entitled to your refund, interest, and costs pursuant to the Code of Civil Procedure. And once there is a single adjudication that a tax was illegal or otherwise improperly imposed, every taxpayer is entitled to an abatement. So the argument that while only those people who are savvy enough to eject are going to get their money back, that's true. Section 18.145 of the Property Tax Code specifically states every taxpayer is entitled to an abatement. Once a claim of constitutionality or once a claim that a tax ejection was illegally imposed is made by the trial judge. The legislature in setting up this procedure protects the interests of the taxpayers and also protects the interests of the taxing body. It protects them from long protracted delays which could result from injunction proceedings and having them put money into funds for an indeterminate time. So the legislature has struck a balance. But counsel, just let me interrupt for a second. Certainly. The Highway Code seems to authorize the voters to pass this road tax levy. It doesn't say that the taxing body can enact the levy on its own accord. So under these circumstances, didn't Newport Township's levy violate the direct referendum requirement of PTEL here? And doesn't that then render it unauthorized by law? Two questions. Does it violate PTEL? It does not. The first sentence of PTEL says, if a levy is imposed without referendum or is subject to a backdoor referendum, then it has to go to direct referendum. So this was not that case. This was not a levy that was imposed without referendum. They had a referendum. They presented the Highway Code at the special meeting for which anyone in the township was able to appear. And the question is, would that make it illegal if it violated PTEL? Well, unauthorized by law. Unauthorized. Not illegal. Unauthorized. They're two different things. Correct. No, it would not make it unauthorized by law. And the reason is, unauthorized by law means that the taxing body wouldn't have any power to tax under any circumstances. Millennial Park, for instance. Under no circumstances could the assessor tax a license on exempt property. If the tax is illegally imposed, and this was addressed in ACME, Supreme Court 770 decision, said, yeah, this tax was illegally imposed. You didn't file PTEL. And anyone who timely filed, pursuant to the property tax code, is entitled to a refund. So, no, it doesn't fit the narrow definition of unauthorized by law. Now, Plaintiff repeatedly conflates the unauthorized by law exception and illegal tax in his briefs. But as we've discussed, these are very separate analysis. And as Judge Marcoulier pointed out in her ruling, unauthorized by law is a very narrow exception. And when you look at the case law, you can see just some of these cases. R.E. Warner Company v. Live Fire Protection District. In that case, the Fire Protection District imposed a tax for 14 years on people who weren't even within its taxing jurisdiction. They weren't even their constituents. Of course, that's not unauthorized by law. Because the Fire Protection District still had a statutory authority to tax, they just were imposing the tax on the wrong people. People X Row Williams, again, a new road tax, just like we have here. The argument was you didn't even get enough signatures to have the referendum at the township meeting. Supreme Court said that's not unauthorized by law. I mean, they still had the statutory power to tax. Given v. Orr, the county clerk, the allegation was created, created his own levy out of thin air. The appellate court found that that is not unauthorized by law. So, again, it's a very narrow exception to the implied effects of this case. You had mentioned earlier that a tax objector, if successful, could recover the amount of tax plus interest plus cost. Where is there a provision for recovery of cost? It's in the court of civil procedure. So it's not, it's in a different spot. It's not in the tax code. It's in a different spot. And, you know, Plante makes the argument that, well, you know, specific overrides general. And that would be the case if the property tax code specifically said you're not entitled to cost. Then he would be right. But it's silent on that. So, therefore, the court of civil procedure applies. There's no conflict between the two. So some of the other arguments that, well, one thing I want to bring up is Plante has given this court no reason why he didn't pursue his remedies under the property tax code. Which both Gibbon and Bass found that that was a factor. I mean, why wasn't he able to do that? I mean, he claims that the right to vote was violated. But nowhere in his briefs does he say that he wasn't aware of the meeting or somehow the meeting took place without his knowledge. The argument that if 4,000 people showed up, maybe they wouldn't have a meeting, that's not true. Under the law, 4,000 people show up. And you can't fit them in your room. You've got to find a room that night to let everyone who shows up vote. So the right to vote, he says it was violated. He doesn't substantiate that in any way. It's a plea. What type of notice is given for this meeting? Well, the notice is given both in a newspaper of general circulation and it's posted throughout the township. Now, they don't, the only allegation that they make is that the, they don't, they don't allege it wasn't posted. They simply say it wasn't published in a newspaper of general circulation. What we have an affidavit from the Highway Commissioner saying both that it was posted in a newspaper of general, published in a newspaper of general circulation, and that it was posted, and there's simply nothing to rebut those allegations. So, now, plaintiff argues that ACME's, ACME's discussion of the property tax code is the exclusive remedy for a tax objection. It's dicta. Number one, even if it was dicta, dicta from the Supreme Court, in the cases plaintiff himself cites, is entitled to respect. Furthermore, it's not dicta because the claim in ACME was that the taxpayers didn't timely file. So the fact that defining that this was an illegal tax for which any taxpayer timely filed pursuant to the property tax code is entitled to a refund was essential to the outcome of the case. It doesn't fit the definition of a dicta. Dicta, excuse me. Cases decided prior to Petel are irrelevant, plaintiff's argument. It's not true. It would only be true if Petel provided a private right of action or somehow changed the property tax code, which the legislature is presumed to know what the case law is. They didn't do that given first resources. There's no applied rights under the property tax code. So long and short of it, Judge Marcudia was absolutely correct in finding that she had no subject matter jurisdiction to hear plaintiffs. A class action complaint for equitable remedies that was filed outside of the property tax code. The property tax code was the sole and exclusive remedy. The case was appropriately dismissed. Some of the cases you've talked about, and especially this Williams versus McDonald case where equitable relief, I believe, was denied, predated the adoption of Petel. Why are they still good law if they are? Well, Petel doesn't apply a private right of action. Likewise, it doesn't say anything that would somehow take Petel violations outside of the property tax code. So it doesn't affect this private precedent. Briefly, I'll talk about, may I finish? You've got about a minute. All right. So as far as 2615, Judge Marcudia granted two of the counts pursuant to 2615. With respect to the individual, plaintiff counsel has conceded that the individual trustees don't belong in this case. So even if the court was to rule, the individual trustees should be out. Judge Marcudia granted the injunction count, pursuant to dismissing the injunction count, not only pursuant to lack of jurisdiction, but also 2615. Plaintiff counsel hasn't addressed that in his briefs, so he's waived that. Furthermore, he didn't even address even the proper elements for injunctive relief. And likewise, Coulier, Tyer, and Rubber Company versus Tierney said that injunctive relief or actually said that declaratory relief is completely inapplicable and unavailable in tax objection cases. So Judge Marcudia would have been within the rights to dismiss the count 1, pursuant to 2615 as well. And Nassau National Bank versus County of Cook said the same principles about injunctive relief in tax matters also bar declaratory relief in tax matters. Count 3 for unjust enrichment, Asburian versus Village of Gardesa, there is no exception to the voluntary payment doctrine with respect to a taxing body. So no matter how they try to parse it or how they try to replete it, that would never survive a 2615 motion. This Court and this panel can affirm on any basis in the record. So therefore, I believe that I'd ask that the Court dismiss or affirm the dismissal not only on 2619, but in expense to 2615 as well. With respect to Section 1983, due process of law, Judge Marcudia was absolutely correct in dismissing that pursuant to 2615 because there's, as she said, there's no high visible Section 1983 claim when adequate state law remedy is available, the tax objection procedure is such and available, that procedure of which is well set. Likewise, our Supreme Court in the Sal National Bank found that the state tax objection procedure allows constitutional rights to be litigated. If you could give us a summary. With that, I would simply ask that the panel affirm Judge Marcudia's ruling dismissing this case pursuant to 2619 for lack of jurisdiction and as well affirm it on the basis of 2615. Thank you. Mr. Hogan, I feel like I just read 10 pages of single-spaced brief because you were very quick. Thank you. Thank you. And Mr. Christensen. Good morning. May it please the Court. I'm here on behalf of the Lake County Clerk. As Mr. Hogan talked about, the first reason for dismissal of this case is that the action should have been brought under property tax code by plaintiff. For whatever reason, it wasn't. The unauthorized by law exception doesn't apply. I don't want to rehash that argument. The one I want to focus on with my time was the alternative argument as to count for the attempt by plaintiff to plead a federal Section 1983 action against the various defendants, including the Lake County Clerk. I think first and foremost, when you take a look at this count, and it was illustrated in the first part of the argument with unauthorized by law, there is an adequate remedy under Illinois state law. And that is an action under the property tax code. As the Frank case made clear in the cases it cites within that, the federal courts have recognized the Illinois procedure under the property tax code provides an adequate remedy for taxpayers in the state of Illinois to litigate whatever issues they have relating to issues they have with their property taxes, including constitutional claims, such as the one plaintiff has tried to assert in this action. Counsel, in Plaintiff's reply brief, he suggests that the county clerk is contending here that she is required to extend a tax simply because someone would bring a paper to her desk and ask for it to be levied. Is that what the clerk's position is? Or if not, what is the role of the clerk in the process of extending taxes? Well, I think that role has been delineated in certain case law. But in general, there are certain procedural documents, levy documents that have to be brought to the clerk's office. And as long as those correct documents are brought, the levy ordinance, then yes, her job as the Lake County clerk is ministerial. And that Rockford case makes that very clear. A clerk, a county clerk does not have the right to determine the legality of a levy. Her duty is ministerial, which means as long as the proper paperwork has been submitted. She has to go ahead and put it through so that the tax can be collected. The clerk refused to extend the levy? I think in the Rockford case, the clerk does not have that right to make that determination as a legality. That's for the court to do. I mean, you look here. I think the perfect example, we have plaintiff claiming that there's a violation of P-TEL in this situation. We have the new court defendants saying, no, this row fund tax doesn't violate P-TEL, and Hampshire doesn't come into play. It's not for the Lake County clerk to decide that legal issue. That's something for the courts to decide. And then once the courts make the decision on that, then the Lake County clerk can act appropriately upon that judicial fine against the legality of that particular tax. Can this particular issue with reference to the county clerk also be determined in the property tax appeal? If it were to be pursued as a property tax appeal, would that be litigated as well? The tax appeal process, it says it's a complete remedy. So I think you can raise whatever issues you have with the enactment of the tax that you claim creates a legality of that tax. But as to the clerk in this case herself, the issues would remain the same in both places, correct? This was my job. It was ministerial. I did it. Correct. So why then couldn't it be brought to a court as opposed to litigated through the property tax appeal? Well, I think, one, there is an issue as far as the way the clerk handled this particular situation. Again, her job was ministerial. The only allegation in the 1983 count relative to her is the extension of the tax that's in paragraph 41 of the First Amendment complaint. The 1983 count requires that you have personal conduct that constitutes a constitutional violation. Well, the conduct of a clerk in simply extending a tax pursuant to her ministerial duties does not support that type of action, notwithstanding the fact that there was an adequate remedy under the Illinois state law, particularly the property tax code. This litigation, as argued by Mr. Long, should be quicker, should be more efficient than a property tax appeal. Is that a reason to not go through a property tax appeal? No, and I think you look at the from and some of the progeny from that in finding that Illinois has an adequate remedy. They point out, well, even if there are slight data delays in that process, you have the opportunity to raise all the arguments you have before the trial court in your property tax case, and then you can appeal those decisions and consequently, no, that would not be a basis. Thank you. Can I sum up briefly? Yes. We would just respectfully request on behalf of the Lake County clerk that this court affirm the decision of the trial court in dismissing the first amendment complaint with prejudice. Thank you. Thank you. Mr. Long. If we take everything Mr. Christensen just said as true, the one thing that he really missed on this is, and I want to use the word he used, the ordinance. There is no levy ordinance. The paperwork was not in proper form. They were presented with the results of some referendum vote. The taxing body itself, if you want to go back and think about how the government operates, Newport Township did not adopt a tax. Some electors voted to adopt a tax. So now they're trying to conflate an ordinance with the vote. And the vote, as I've said before, and I don't want to repeat myself, it just sets up the next chain of events that's supposed to happen. What did, what was transmitted to the clerk, the county clerk? Just the raw results of the vote and the request to extend. And was that what, excuse me, was the language in that document the same language that the people were asked to adopt? Apparently so. All right. And so could, I mean, ordinance is a term of art in our business. Sure is. Could that be also considered the mandate of the people, thereby an ordinance? No. No. Under the Township Act, under the Township Code, and for that matter, the municipal code, an ordinance is a really clearly defined thing. Did anyone sign it? It has to be brought on an agenda. It has to be voted on. There are all sorts of requirements by the elected officials, not by the electors at a special meeting. Wasn't there an agenda identified with this particular meeting with the notice? Apparently there was, yes. But I don't think that's, I don't think that can take the place of the vote of the corporate authority, which is duly constituted according to. Do you have any evidence that the people who voted were not part of this township? Never got that far into the case to take the, to take discovery to find that out. The names I've seen appear to be township members, yes. Okay. I don't know that there's a big issue with that. There seems to be some allegation in your brief that this was a packed house. Right. That only certain people were invited. Right. Why do you make that allegation? Not that certain people were invited. That's not so much it as it's a demonstration of the way in which a process that is removed from the balloting can be manipulated. It's that the people that are interested in adopting the tax can bring a lot of their supporters, which a lot isn't necessarily a really large number. I think 48 or 34 or whatever the number was. You can get those people in there to vote for. At a ballot box, there's a whole different dynamic. You have to explain your referendum to people to get it passed. And that's a whole lot, that's a whole different process. Have you read any referendums lately? I've read a lot of referendums. I wrote one last week. I'm not sure that they're real explanatory. They are not, and we're not allowed to explain them under the referendum. So how then can this, how can a vote on a referendum explain the issue? No, that's not what I'm getting at. The political process is different. The political process, and there's nothing inherently wrong with this. You can pack that house to get the question on the ballot. I don't have a problem with that. I think that's what the political process is designed to do in that particular setting, the way the statutes fit together. Bring in the folks, pack the house, get the thing on the ballot, but then you've got to go out into the community and sell it, or it's not going anywhere. Because putting a referendum on a ballot in Lake County and doing no marketing of it, you're never going to get it passed. But there's no statutory requirement that you go out and sell it? Of course not. Okay. The other... Counsel, excuse me one second. The City of Brockwood v. Gill case establishes that the clerk's duties were ministerial, as the opposing counsel pointed out. How do we get around that holding? Because Petel gives us the opportunity, and read in conjunction with Hampshire Township, gives us the opportunity for a checklist. It's a ministerial act. Here I'm presented with a vote. I don't have an ordinance. I don't have any other paperwork that I should have, so that should have bounced it on the first attempt. But I'm also looking at this, it's imposing a new tax rate on its face. So I check the same person, checks the electorate, was there a vote? Was it ever on a ballot? No, there wasn't. That's another. These are simple ministerial acts you can perform if you wish to. Or I suppose you can rely on Brockwood and just say, well, they brought it in, so it must be good enough, and that's, you know, I'll just extend the tax, which seems to be the other side of it. But the cases, I mean, Petel didn't, the adoption of Petel doesn't mean that the cases that came before still aren't good law. I mean, I think that's what you're saying by indicating that you felt the role of the clerk was ministerial. I still think the role of the clerk is ministerial, but I think she has to perform some ministerial duties rather than just because somebody shows up at her desk with a piece of paper and says, here, can you extend the tax and give me $300,000 a year? I think she ought to do more than that. I don't think that's asking an awful lot. I guess it's a question of really what ministerial means, but I understand you have a very broad definition of it. Well, yeah, but counterbalancing that is the overly broad definition of what a tax objection is. So, you know, it's one of the beauties of bringing a case like this up is there are a lot of things to look at and to see the way in which the statutes fit together. And if I may wrap up briefly, I just want to say that I appreciate the opportunity to come here and try to explain this. I think that these statutes can be read together in a meaningful way, which makes sense. And I do think that Petel is primarily intended not to protect the government, as we've just heard, but to protect the voting rights and to protect the people from the imposition of taxes that are done in a procedurally incorrect way that deprives them of their substantive right to vote at the ballot box. That is the single key factor that underlies all of the claims made in this case. And for that reason, I think the Judge Marpillier was led into error, and this case must be reversed and remanded for further proceedings. Thank you, folks. Thank you. All right. Counsel, thank you for your argument this morning. We will take the matter under advisement, and we will issue a decision in due course. We are going to take a brief recess to prepare for our next case. Thank you.